**UNITED STATES of America ex rel. Andrew Joseph MACHI, Petitioner-Appellee,**

v.

**UNITED STATES DEPARTMENT OF PROBATION AND PAROLE, Respondent-Appellant.**

No. 75–2053.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1976.

Decided June 2, 1976.

William J. Mulligan, U. S. Atty., Milwaukee, Wis., Stephen H. Pugh, Jr., Asst. U. S. Atty., Chicago, Ill., for respondent-appellant.

Joseph P. Balistrieri, Milwaukee, Wis., for petitioner-appellee.

Before SWYGERT, Circuit Judge, MARKEY, Chief Judge, Court of Customs and Patent Appeals * and JAMESON, Senior District Judge.**

JAMESON, Senior District Judge:

Petitioner, Andrew Joseph Machi, filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction for illegal gambling activities, claiming that illegal wiretap evidence had been admitted in his trial. The district court granted the motion on the ground that the Attorney General had not properly reviewed and approved the application for the wiretap. We reverse, finding the issue raised by Machi insufficient to

warrant § 2255 relief and that the wiretap was properly authorized and valid.

## Background

On December 4, 1970, following an investigation by federal officers of interstate gambling and racketeering, Machi and five co-defendants were indicted on eight counts charging conspiracy and the use of interstate telephones with the intent to carry on an illegal gambling business in violation of 18 U.S.C. §§ 371 and 1952. In a non-jury trial the Government introduced evidence obtained through monitoring telephones in and near Machi's home. The evidence showed that Machi had been involved in extensive bookmaking and betting activities.

In a motion to suppress the wiretap evidence, considered prior to trial, Machi contended that the application for the wiretap did not establish probable cause and did not comply with 18 U.S.C. § 2518 because it did not adequately describe the failure of other investigative techniques thus indicating the necessity of telephone monitoring. The district court denied the motion, admitted the evidence,[1] and on October 11, 1972 found Machi guilty of six of the counts with which he was charged. Machi appealed his conviction. On appeal he did not raise the issue concerning the legality of the wiretap evidence admitted at the trial, but argued that his conduct did not violate 18 U.S.C. § 1952, claiming that it was intrastate in character. By unpublished order dated July 10, 1973 this court affirmed, holding that the interstate telephone calls were sufficient to make § 1952 operable.

Machi's § 2255 petition for "a writ of habeas corpus" was filed on January 21,

---

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

** The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation.

1. The district court entered two orders on Machi's original motion. The first, dated December 21, 1971, held that the telephone monitoring was supported by probable cause but that the Government had not complied with 18 U.S.C. § 2518 in preparing the application for the monitoring. In a second order, dated January 21, 1971, the court vacated its earlier decision regarding the noncompliance with § 2518 and found that the evidence could be properly admitted.

1975, raising an issue which had not been called to the attention of either the district court or this court on appeal. The petition alleged that the wiretap evidence introduced at the trial should have been suppressed because the wiretap application "did not contain the authorization of the attorney general or his specially designated assistant", as required by 18 U.S.C. § 2516(1). In opposing the motion the Government filed an affidavit of Sol Lindenbaum, Executive Assistant to the Attorney General. The affidavit stated that on September 4, 1970, the "Criminal Division of the Department of Justice addressed to the Attorney General a request for approval of authorization to apply for an interception order". The affidavit continued in pertinent part:

> "As Attorney General John N. Mitchell was outside the city of Washington, D. C., I conferred with him telephonically and advised him orally of the substance of a memorandum of recommendation received from the Criminal Division of a proposed memorandum of approval from him to Will Wilson. The memorandum of recommendation was for approval of a request for authorization to make application for a wire interception order with respect to three telephone lines in West Allis and Milwaukee, Wisconsin. He orally approved the recommendation of the Criminal Division, and I thereupon caused his initials to be placed on the memorandum to Will Wilson."

Following the submission of briefs and oral argument, the district court granted Machi's petition, concluding "that § 2516(1) required Mr. Mitchell to have before him more basic information and unscreened data in order for him to make an independent judgment concerning the wisdom of seeking a wiretap order than was possible considering the procedures utilized in this case".[2]

## Contentions on Appeal

The Government contends that:

(1) The waiver provisions of 18 U.S.C. § 2518(10)(a) preclude this collateral attack because the grounds for the attack were available before trial.

(2) The defect in the wiretap application was of insufficient magnitude to warrant granting of relief under 28 U.S.C. § 2255.

(3) The Attorney General's telephonic approval of the wiretap application met the requirements of 18 U.S.C. § 2516(1).

## Waiver

18 U.S.C. § 2518 prescribes procedures for obtaining an order to intercept wire or oral communications. Section 2518(10)(a), relating to suppression motions, provides that, "Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or *the person was not aware of the grounds of the motion.*" (Emphasis added).

Contending that the "precise grounds for the present petition" had been established before Machi's trial (e. g. by *United States v. Robinson*, 468 F.2d 189 (5 Cir. 1972)[3] and other cases), the Government argues that Machi is precluded from questioning the wiretap procedures through a § 2255 motion.

Recognizing that the grounds for the motion may have been available prior to Machi's trial, the district court invited the parties to brief the issue. The petitioner responded. Thereafter the court entered an order noting that "petitioner's counsel flatly states . . . that" the "decision in *Robinson* was unknown to the petitioner or his counsel". The court concluded that un-

---

**2.** The decision was in two parts. On August 11, 1975 the court held that Machi could utilize a § 2255 proceeding to attack the validity of the wiretap authorization. On September 13, 1975 the court, considering the merits, entered an order vacating the conviction.

**3.** In *Robinson*, the court held that a wiretap application approved by the Executive Assistant Attorney General without participation by the Attorney General or his specially designated assistant did not comply with 18 U.S.C. § 2516(1) and evidence obtained therefrom could not be admitted at the trial.

der the express wording of the proviso in 18 U.S.C. § 2518(10)(a), quoted *supra*, Machi was not precluded from attacking his conviction through the § 2255 motion. We agree.[4]

Relief under 28 U.S.C. § 2255

We find merit in the Government's related contentions that (1) the procedural defect upon which petitioner relies does not warrant relief under 28 U.S.C. § 2255, and (2) the telephonic approval of the wiretap application was a sufficient compliance with 18 U.S.C. § 2516(1).

Under § 2255 a sentence may be vacated, set aside or corrected where it "was imposed in violation of the Constitution or laws of the United States." The permissible bases for granting § 2255 relief were recently examined by the Supreme Court in *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). In *Davis* the Court noted that while both constitutional and nonconstitutional grounds are sufficient under the language of § 2255, in order for a claim based on a violation of federal law to be sufficient it must rise to the level of "a fundamental defect which inherently results in a complete miscarriage of justice" and presents under the rule of *Hill v. United States*, 368 U.S. 424, 429, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, 421 (1962), "exceptional circumstances where the need

for the remedy afforded by the writ of *habeas corpus is apparent*." 417 U.S. at 346, 94 S.Ct. at 2305, 41 L.Ed.2d at 119. The Court in *Davis* found an intervening change in the substantive law under which the petitioner had been convicted to be so fundamental that habeas relief was required to prevent a "complete miscarriage of justice".[5]

Following the principle announced in *Davis*, this court has granted relief in § 2255 petitions raising non-constitutional claims where "exceptional circumstances" have been presented and the need for habeas corpus relief is apparent. In *Gates v. United States*, 515 F.2d 73 (7 Cir. 1975), for example, it was held that § 2255 relief was mandated where the district court had failed to inform a defendant entering a plea of guilty of certain fundamental consequences of his plea, in violation of Rule 11, F.R.Crim.P.[6] In *Strauss v. United States*, 516 F.2d 980 (7 Cir. 1975) we found that § 2255 applied where, as in *Davis*, there had been an intervening change in the substantive law under which the petitioner had been convicted.[7] In *Bachner v. United States*, 517 F.2d 589 (7 Cir. 1975), however, we declined to grant § 2255 relief where a trial court's failure to advise the petitioner of consequences of his guilty plea were at most "technical" violations of Rule 11,[8] holding that the record disclosed no "fundamental defect which inherently results in a

---

4. It may be noted also that the issue raised in *Robinson* was not finally determined until January 8, 1974, when the Supreme Court decided *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341. In the meantime the Fifth Circuit, following a rehearing en banc on motion of the Government, on January 16, 1973 remanded *Robinson* for an evidentiary hearing. 472 F.2d at 973. Both *Giordano* and *Robinson* list cases on both sides of the issue, most, but not all, of the cases following the holding in the first *Robinson* decision.

5. In *Francis v. Henderson*, decided May 3, 1976, —— U.S. ——, 96 S.Ct. 1708, 48 L.Ed.2d 149, 44 L.W. 4620, the Court, following the rules set forth in *Davis*, held that a collateral attack upon "a state court conviction because of an allegedly unconstitutional grand jury indictment" requires "not only a showing of 'cause' for the defendant's failure to challenge

the composition of the grand jury before trial, but also a showing of actual prejudice."

6. In *Gates*, the trial judge failed to inform the defendants at the time of sentencing that they would be ineligible for parole but instead incorrectly informed them that they would have the opportunity for early release.

7. In *Strauss* the petitioner had been convicted under an interpretation of the mail fraud statutes which was repudiated by a Supreme Court decision conceded to be retroactive by the Government.

8. The court in *Bachner* held that failure of the sentencing judge to inform the petitioner of parole ineligibility was a "technical error" where the prosecutor at the sentencing had stated the no-parole, no-probation provisions which were to be applied.

complete miscarriage of justice."[9] 517 F.2d at 595.

We do not find in the present petition the requisite "exceptional circumstances" and "fundamental defects" necessary to form a basis for § 2255 relief. As discussed *infra, United States v. Giordano, supra,* the Supreme Court decision interpreting the wiretap laws to require surveillance to be authorized by the Attorney General or his specifically designated assistant, upon which *Machi's* petition is based, did not rest on constitutional grounds but upon the statutory provisions of the electronic surveillance laws. 416 U.S. at 524, 94 S.Ct. at 1831, 40 L.Ed.2d at 358. Petitioner's reliance on *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), which held that a conviction based on an unconstitutional search and seizure can be challenged under § 2255, is therefore misplaced. This petition does not raise a constitutional issue.

The district court recognized that the Attorney General in the telephone conversation had personally approved the application for electronic surveillance, but concluded that more information was required "for him to make an independent judgment concerning the wisdom of seeking a wiretap order". Even assuming error which might be reversible on direct appeal, there was no "fundamental miscarriage of justice". We are not dealing with a situation, as in *Davis,* where there has been a substantive change in the law which makes the petitioner's conduct no longer illegal. Rather we are concerned with the manner in which an executive official performed ministerial duties. We conclude that petitioner has not raised an issue which would form the basis for § 2255 relief.

### Validity of the Wiretap Authorization

18 U.S.C. § 2516(1) requires that:

"The Attorney General, or any Assistant Attorney General especially designated by the Attorney General, may autho-

rize an application to a Federal judge . . . for . . . an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, . . ."

Guidelines for what constitutes proper authorization under § 2516(1) are set forth in the companion cases of *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), and *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). In *Giordano* the Court held that evidence obtained through wiretap authorizations where the application was made by the Attorney General's Executive Assistant (Lindenbaum), without the approval of the Attorney General or his designated Assistant Attorney General, must be suppressed. In *Chavez* the Court held that misidentifying the Assistant Attorney General as the official authorizing a wiretap application when the Attorney General himself had in fact given the approval, did not require suppression of the evidence obtained through the wiretap. The Court in *Chavez,* 416 U.S. at 574–575, 94 S.Ct. at 1856, 40 L.Ed.2d at 392, distinguishing *Giordano* said:

"Though we rejected, in *Giordano,* the Government's claim that Congress intended 'unlawfully intercepted' communications to mean only those intercepted in violation of constitutional requirements, we did not go so far as to suggest that every failure to comply fully with every requirement provided in Title III would render the interception of wire communications 'unlawful.' To establish such a rule would be at odds with the statute itself."

In *United States v. Quintana,* 508 F.2d 867 (1975), this court analyzed the principles established in *Chavez* and *Giordano* and the several circuit court decisions concerned with authorization problems aris-

---

**9.** In a concurring opinion, Judge Stevens suggested that this holding was "merely another way of saying that the Due Process Clause was not violated because the proceedings, viewed as a whole were not fundamentally unfair." 517 F.2d at 599.

**184**

ing under § 2516(1).[10] It was noted that in all cases considering the problem, the basic inquiry has been whether the Attorney General or his designated Assistant Attorney General actually approved the application or whether someone not authorized to issue an approval made the final decision. In proving the participation of Attorney General Mitchell an affidavit from Lindenbaum was held to be sufficient. 508 F.2d at 871. It was noted that at least four other circuits [11] have upheld wiretaps when the Attorney General's personal participation was proved through the affidavit of Lindenbaum and a Mitchell-initialed memorandum to Wilson. The Lindenbaum affidavit in this case shows that he received telephonic approval from Attorney General Mitchell and then placed Mitchell's initials on the memorandum of approval. The affidavit is sufficient proof of Mitchell's personal participation as required by *Giordano* and *Chavez*.[12] The court observed further in *Quintana* that "the statute does not state what the Attorney General must review when deciding when to allow an application to be presented to the district [judge]." 508 F.2d at 871, n. 2. We find nothing in the statutes or the cases to indicate that the Attorney General must make a totally independent "probable cause" determination or that he cannot rely on his subordinate to summarize applications for him or make recommendations to him concerning their merits. The probable cause determination is made by the judge who authorizes the wiretap.

We conclude that the procedure utilized in securing the approval for the wiretap in question was sufficient to give "assurance of a responsible executive determination of the need and justifiability of each interception", which the Supreme Court in *Giordano*, 416 U.S. at 517, 94 S.Ct. at 1827,

40 L.Ed.2d at 354, observed was one of the principal objectives of Congress in enacting § 2516.

Accordingly, It Is Ordered that the order vacating the convictions is reversed and that the judgment of conviction be reinstated.

Reversed.

**10.** *Quintana* reviewed the following circuit court decisions pertaining to § 2516(1): *United States v. Robinson*, 472 F.2d 973 (5 Cir. 1973); *United States v. Brick*, 502 F.2d 219 (8 Cir. 1974); *United States v. James*, 161 U.S.App. D.C. 88, 494 F.2d 1007 (1974); *United States v. Firoella*, 468 F.2d 688 (2 Cir. 1972); *cert. denied*, 417 U.S. 917, 94 S.Ct. 2622, 41 L.Ed.2d 222 (1974); *United States v. Ceraso*, 467 F.2d 647 (3 Cir. 1972); *United States v. Cox*, 462 F.2d 1293 (8 Cir. 1972), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974).

**11.** The cases, from the Second, Eighth, Third, and D.C. Circuits, are cited in Note 10.

**12.** See *United States v. Falcone*, 505 F.2d 478, 481 (3 Cir. 1974).